**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**KENDALL R. STANLEY, SR.,**

        **Plaintiff,**

    **-against-**                                                  **1:13-CV-00944**

**OPTUMINSIGHT, INC., OPTUM,**
**AXOLOTL CORP., UNITEDHEALTH**
**GROUP INCORPORATED, and**
**UNITED HEALTHCARE SERVICES**
**INC.,**

        **Defendants.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**THOMAS J. McAVOY**
**Senior United States District Judge**

## DECISION and ORDER

**I.    INTRODUCTION**

Plaintiff commenced this action asserting claims for breach of contract (First Cause of Action); breach of implied contract and unjust enrichment (Second Cause of Action); fraud and conspiracy to defraud (Third Cause of Action); violations of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962 ("RICO") (Fourth Cause of Action); and "punitive damages" (Fifth Cause of Action). Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Fourth and Fifth Causes of Action. Motion, dkt. # 3. Plaintiff responds by filing a cross-motion for leave to file an Amended Complaint which adds additional allegations relevant to the Fourth Cause of Action, and which moves the demand for punitive damages to the "WHEREFORE" clause. *See* Cross-Motion, dkt. # 9. Defendants have filed opposition to the cross-motion and a reply in support of their original

1

motion, arguing that the RICO claim alleged in the proposed Amended Complaint is still legally deficient. *See* Reply, dkt. # 13. Plaintiff has filed a sur-reply, arguing that the RICO claim, as pleaded in the proposed Amended Complaint, is legally sufficient. *See* Sur-Reply, dkt. 14.

## II. STANDARD OF REVIEW

"Where a plaintiff seeks to amend his complaint while a motion to dismiss is pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint.'" *Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp.2d 265, 276 n. 9 (N.D.N.Y. 2012)(*quoting Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp.2d 376, 384 (D. Conn. 2008)). Inasmuch as both parties have addressed arguments to the allegations in the proposed Amended Complaint, the Court will consider Plaintiff's motion to amend as a concession that the Fourth and Fifth Causes of Action in the Complaint are subject to dismissal, and will address the sufficiency of the Fourth Cause of Action asserted in the proposed Amended Complaint.

On a motion to dismiss, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As a general rule, courts are mindful of the pleading requirements of a RICO claim because of the serious nature of the allegations.

> Although civil RICO actions generally need not do more than meet the routine pleading requirements outlined above, courts are particularly mindful of these standards in the context of a civil RICO claim, the assertion of which often has "an almost inevitable stigmatizing effect on those named as defendants." Because of this likely powerful effect on potentially innocent defendants who face the threat of treble damages, and the concomitant potential for abuse of RICO's potent provisions, the court is aware of a particular imperative in cases such as the one at bar, "to flush out frivolous [civil] RICO allegations at an early stage in the litigation."

*Curtis & Assocs., P.C. v. The Law Offices of David Bushman, Esq., et al.*, 758 F. Supp. 2d 153, 166-67 (E.D.N.Y. 2010)(citations omitted) (*quoting World Wrestling Entm't, Inc. v. Jakks Pac.*, Inc., 530 F. Supp. 2d 486, 495-96 (S.D.N.Y. 2007)); *see also Brookdale Univ. Hospital v. Health Ins. Plan of Greater N.Y.*, 2009 U.S. Dist. LEXIS 28880, at *9-10 (E.D.N.Y. Mar. 31, 2009) ("Courts have repeatedly cautioned that '[c]ivil RICO is an unusually potent weapon -- the litigation equivalent of a thermonuclear device.' Accordingly, 'Civil RICO should not be used to transform a 'garden variety fraud or breach of contract case … into a vehicle for treble damages.'") (*quoting Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 2000)*; Evercrete Corp., v. H-Cap, Ltd.*, 429 F. Supp. 2d 612, 622 (S.D.N.Y. 2006)).

Fed. R. Civ. P. 15(a)(2) provides "[t]he court should freely" grant leave to amend "when justice so requires." In addressing a motion to amend, the Court considers such factors as undue delay, bad faith, dilatory motive, undue prejudice, and futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In determining whether proposed claims are futile, the Court is required to adopt the same analysis as that applied on a

3

motion to dismiss pursuant to Rule 12(b)(6). *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir. 2005).

## III. BACKGROUND

### a. Allegations in the proposed Amended Complaint

The following factual allegations are taken from the proposed Amended Complaint. Plaintiff became an employee of Axolotl Corp. on July 23, 2007. He and Axolotl Corp. agreed to a compensation package whereby Plaintiff would receive a base salary plus commissions on sales. Subsequently, Axolotl Corp. was acquired by, and became a subsidiary of, OptumInsight, Inc., Optum, UnitedHealth Group Incorporated and/or United Healthcare Services Inc. Plaintiff's compensation package remained the same with his new employer, OptumInsight, Inc., Optum, UnitedHealth Group Incorporated and/or United Healthcare Services Inc.

After the transition, Defendants began withholding duly earned commissions. Defendants made assurances and promises to Plaintiff that these withheld commissions would be paid. In this regard, representations were made to Plaintiff by several of Defendants' employees, including Jan Grimm, Robert Adams, Matt Olsen, Lucille Meredith, Benjamin Goodman, Paul Yechout, Samantha Hanson, William Lynch and Robin Mercer, that back commissions would be paid.[1] Such representations were made during telephone conversations that were conducted on April 20, 2012, as part of a "sales retention meeting" in which all of the above referenced individuals participated; as well as on other occasions in other phone conversations held between Plaintiff and one or more

---

[1] Plaintiff asserts that these individuals are employed variously by United Health Group, Optum, OptumInsight, and Axolotl.

of these individuals. In addition to the referenced phone conversations, Plaintiff participated in a WebEx presentation during the April 20th, 2012 "sales retention meeting" phone call, in which Defendants presented Plaintiff, and other co-employee sales people, with a Power Point Presentation in which representations were made that Plaintiff was owed additional commissions.

On July 19, 2012 , Plaintiff received email communication from Defendants indicating that they would make good the payment of back commissions, along with follow-up emails on this subject sent on July 20, 2012, August 9, 2012, August 17,2012, and August 20,2012. Participants in this email exchange included Plaintiff; Paul Yechout, an employee or representative of UnitedHealth Group; Benjamin Goodman, an employee of Optum and/or OptumInsight; Matthew Olsen, an employee and comptroller of Axolotl; Samantha Hanson, a Human Resource representative and employee of Optum and/or OptumInsight; Lucille Meredith, an employee of United Health Group; William Lynch, VP of Health Information Exchange Sales, and an employee of OptumInsight; and Robert Adams, VP of Health Information Sales and an employee of Optum. Additional representations and promises regarding the payment of back commissions were made by Defendants via email communication dated April 23, 2012.

Plaintiff contends that these promises and assurances induced him to continue his employment with Defendants. Other co-employee/salespeople working for Defendants were believed to be experiencing similar problems with getting their duly earned commissions paid, and it is believed that similar representations were made to these other co-employee/salespeople.

After a protracted period of making these assurances and promises, Defendants

5

refused to pay the back commissions as promised, and offered an in-house arbitration system to Plaintiff and his co-workers to resolve their claims. Plaintiff contends that the co-workers who elected to proceed with this in-house arbitration procedure were awarded only a fraction of the back commissions that they were owed.

On September 10, 2012, Plaintiff resigned from his employment. He made demand to his employer for payment of overdue and outstanding compensation in the form of unpaid commissions in the amount of $569,000, but Defendants have failed and refused to make these commission payments.

In the Fourth Cause of Action alleging RICO violations, Plaintiff asserts that "Defendants entered into an agreement and did conspire amongst themselves and others to commit mail and wire fraud to deprive the Plaintiff, and other similarly situated employees, of their lawfully earned commissions, and knew that these acts were part of a pattern of racketeering activity." Proposed Am. Compl. ¶ 49. The conduct complained of includes Defendants' failure to pay Plaintiff and similarly situated employees their lawfully earned commissions; providing ongoing promises and/or assurances to Plaintiff and similarly situated employees of their intent to pay earned commissions when in fact Defendants had no intention of doing so; making false and misleading statements and promises to Plaintiff and similarly situated employees of their intent to pay earned commissions in order to induce Plaintiff and similarly situated employees to remain on the job when the Defendants had no intention to pay such commissions.

Plaintiff further contends that:

56) All of these communications constitute predicate acts in furtherance of a

conspiracy to deprive the plaintiff, and similarly situated employees, of their duly earned commissions.

57) The conduct and behavior described above are related to one another, and are in furtherance of the defendants' racketeering scheme, and constitute a pattern of racketeering activity within the meaning of 18 USC § 1962.

58) The conduct and behavior described above were engaged in by the Defendants, who are engaged in an unlawful, continuing and ongoing enterprise to deprive the Plaintiff, and other similarly situated employees, of their lawfully earned commissions; representing a racketeering enterprise within the meaning of 18 USC § 1962.

59) The Defendants were and still are engaged in interstate commerce as defined by 18 USC §1962.

60) The activities described above represent a pattern of unlawful conduct and racketeering as defined in 18 USC § 1962.

Proposed Am. Compl. ¶¶ 56-60.

### b. Arguments

Defendants argue that the allegations in the proposed Amended Complaint are insufficient to state a plausible RICO claim because they do not satisfy the heightened pleading requirements of Rule 9(b); do not establish a "pattern of racketeering activity;" and do not sufficiently allege fraudulent intent on behalf of the Defendants. Plaintiff opposes each ground.

## IV. DISCUSSION

### a. RICO Claims - Fourth Cause of Action

#### 1. Elements

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120

(2d Cir. 2013)(interior quotation marks and citation omitted). 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Thus, to establish a violation of § 1962(c), a plaintiff must show that a person engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cruz*, 720 F.3d at 120 (interior quotation marks and citation omitted).

### 2. Heightened Pleading Requirements of Rule 9(b)

A "pattern of racketeering activity" requires a plaintiff to plead at least two predicate acts of racketeering within ten years of each other. *See* 18 U.S.C. § 1961(5). The predicate acts that Plaintiff alleges in this case are mail and/or wire frauds in violation of 18 U.S.C. §§ 1341 and 1343, both of which are included as "racketeering activity" under 18 U.S.C. § 1961(1).

> Mail fraud "occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the purpose of executing such scheme or artifice or attempting so to do.'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647, 128 S. Ct. 2131, 170 L.Ed.2d 1012 (2008) (quoting 18 U.S.C. § 1341). "The gravamen of the offense is the scheme to defraud, and any 'mailing that is incident to an essential part of the scheme satisfies the mailing element,'" *id.* (*quoting Schmuck v. United States*, 489 U.S. 705, 712, 109 S .Ct. 1443, 103 L. Ed.2d 734 (1989)), "even if the mailing itself 'contain[s] no false information,'" *id.* (alteration in original) (*quoting Schmuck*, 489 U.S. at 715, 109 S.Ct. 1443). "Likewise, a defendant commits wire fraud where he 'was one of the participants in a fraudulent scheme which was furthered by the use of interstate transmission facilities.'" *Smokes–Spirits.com*, 541 F.3d at 446 (*quoting United States v. Corey*, 566 F.2d 429, 431 n. 2 (2d Cir.1977)). "[A]ll allegations of fraudulent predicate acts[ ] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). In addition to alleging the particular details of a fraud,

8

'the plaintiffs must allege facts that give rise to a *strong* inference of fraudulent intent.'" *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178–79 (2d Cir. 2004) (citations omitted) (*quoting Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir.1999)). "Although it is true that matters peculiarly within a defendant's knowledge may be pled 'on information and belief,' this does not mean that those matters may be pled lacking any detail at all." *Id.* at 179.

*Curtis v. Law Offices of David M. Bushman, Esq.*, 443 Fed. Appx. 582, 584 (2d Cir. Oct. 13, 2011)(emphasis in original); *see also Cohen v. Cohen*, --- F. Supp.2d ----, 2014 WL 279555, at *5 (S.D.N.Y., Jan. 27, 2014).[2]

"On a motion to dismiss a RICO claim, [Plaintiff's] allegations must [ ] satisfy the requirement that, '[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . .'" *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir.2013) (*quoting* Fed. R. Civ. P. 9(b)). "Allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, [ ] where and when they took place, and [ ] *explain why they were fraudulent*." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (emphasis

---

[2] The Southern District wrote in *Cohen*:

"Mere common-law fraud does not constitute racketeering activity for RICO purposes." *Cofacredit S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir.1999). Thus, in analyzing a claim, "courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Goldfine v. Sichenzia*, 118 F.Supp.2d 392, 397 (S.D.N.Y. 2000) (*citing Schmidt v. Fleetbank*, 16 F.Supp. 340, 346 (S.D.N.Y. 1998)); *see also Gross v. Waywell*, 628 F. Supp.2d 475, 481 (S.D.N.Y. 2009) ("[E]xperience reveals that many plaintiffs, rather than fostering RICO's mission as private attorneys general aiding public law enforcement, actually appear as private prospectors digging for RICO's elusive gold, and more often than not generating substantial costs rather than net gains to the public"). "Allegations merit particular scrutiny where ... the predicate acts are mail and wire fraud, and where the use of mail or wires to communicate is not in and of itself illegal, unlike other predicate acts such as murder or extortion." *Rosenson v. Mordowitz*, No. 11 Civ. 6145(JPO), 2012 WL 3631308, at *5 n. 3 (S.D.N.Y. Aug 23, 2012). "Exercise of federal court jurisdiction in ... cases ... that rely on nothing more than incidental use of mails or wires in furtherance of a simple fraudulent scheme with few victims and narrow impacts, would threaten to federalize garden-variety state common law claims, and offer a remedy grossly out of proportion to any public harm or larger societal interests associated with localized wrongful conduct ordinarily involved in such actions." *Gross*, 628 F. Supp.2d at 482.

9

added) (internal quotation marks omitted); *see also Moore*, 189 F.3d at 173 (RICO complaint based on fraud must "allege facts that give rise to a strong inference of fraudulent intent.") (internal quotation marks omitted); *Cont'l Kraft Corp. v. Euro–Asia Dev. Grp.., Inc.*, No. 97–CV–0619, 1997 WL 642350, at *5 (E.D.N.Y. Sept.8, 1997) ("The cases are legion that a RICO complaint [based on wire fraud] cannot be predicated on innocuous business communications, absent some factual basis for inferring the sender's intent to defraud the recipient via a scheme to defraud.") (alteration and internal quotation marks omitted).

### a. Mail Fraud

While the allegations in the proposed Amended Complaint identify the speakers, dates, and modes of the allegedly fraudulent communications, Plaintiff does not provide facts suggesting how or when the U.S. mail was used, the contents of communications sent through the U.S. mail, or why such communications were fraudulent. Plaintiff's sole allegation of mail fraud is that Defendants made "promises, assurances, and inducements . . . via the US mail." *See* Pl's Am. Compl. ¶ 22. This vague allegation fails to form the basis of a plausible RICO claim. *See Anatian v. Coutts Bank*, 193 F.3d 85, 88 (2d Cir. 1998) (affirming dismissal of a RICO claim for failure to plead the alleged RICO predicate acts of mail and wire fraud with particularity); *see also DNJ Logistic Group, Inc. v. DHL Express (USA), Inc.*, 2010 U.S. Dist. LEXIS 15439, 16-27 (E.D.N.Y. Feb. 18, 2010). Thus, the mail fraud allegations are insufficient to support a RICO claim.

### b. Wire Fraud

#### i. Each Defendant's Contribution to the Fraud

Where there are multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud. *See DiVittorio v. Equidyne, Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). With regard to the wire fraud allegations, Plaintiff alleges only that Defendants' employees or representative made promises to Plaintiff that "back commission payment would be made," but has not alleged any facts specifying each Defendant's contribution to the fraud. *See* Proposed Am. Compl. ¶¶ 51-55. Plaintiff does not "'specify the time, place, speaker, and content of the alleged misrepresentations." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2012) (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)). Plaintiff also does not allege what particular communication each individual made, what participation each Defendant had in the employees' communications, or whether Defendants or Defendants' employees were aware that such statements were misrepresentations.

### ii. Scienter

Plaintiff also does not "explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[s] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2012) (*quoting Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)); *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). "[T]o establish scienter for the fraud claim [at the pleading stage], [Plaintiff] must either (1) identify circumstances indicating conscious or reckless behavior by the defendants, or (2) allege facts showing a motive for committing fraud and a clear opportunity for doing so." *San Leandro Emergency Med. Group Profit Sharing Plan v.*

11

*Philip Morris Cos.*, 75 F.3d 801, 813 (2d Cir. 1996); *see Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)("The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."); *see also United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir.1999)(To prove scienter or fraudulent intent, "the proof must demonstrate that the defendant had a conscious knowing intent to defraud ... and that the defendant contemplated or intended some harm to the property rights of the victim.")(internal citations and quotation omitted). While malice or intent may be averred generally, this is not a "license to base claims of fraud on speculation and conclusory allegations." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (citation omitted). Rather, Plaintiff must allege facts that give rise to a strong inference of fraudulent intent. *Id.*

Plaintiff alleges in conculsory manner that Defendants had no intention of paying the owed commissions,³ but such conclusory allegations are insufficient to survive the pleading stage of a fraud claim under Rule 9(b). *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (dismissing fraud claim because plaintiff's pleading technique was simply to "couple a factual statement with a conclusory allegation of fraudulent intent," and these "conclusory allegations - that Defendants 'knew but concealed' some things, or 'knew or were reckless in not knowing' other things - do not

---

³Plaintiff alleges fraudulent intent at several points in the proposed Amended Complaint (*e.g.*, "Defendants in fact had no intention to pay such commissions." Pl's Am. Compl. ¶ 50; *see also id.* at ¶ 49 ("Defendants . . . knew that these acts were part of a racketeering activity.")).

12

satisfy the requirements of Rule 9(b)."); *see also DNJ Logistic Group, Inc. v. DHL Express (USA), Inc.*, 2010 U.S. Dist. LEXIS 15439, 16-27 (E.D.N.Y. Feb. 18, 2010) (finding plaintiff has pointed to no facts to support its claim that defendant was acting with fraudulent intent).

Plaintiff has also not set forth plausible facts indicating that when Defendants' employees communicated with Plaintiff, these employees were aware that Defendants intended to deprive Plaintiff of duly earned compensation, recklessly disregarded this fact, or had a motive to commit fraud. The only fact Plaintiff has adduced to demonstrate fraudulent intent is that Plaintiff's back commissions were never paid. But, "'fraudulent intent not to perform a promise cannot be inferred merely from the fact of nonperformance.'" *M'Baye v. World Boxing Association*, 2006 WL 2090081, at * 4 (S.D.N.Y. July 28, 2006)(*quoting Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*, 785 F.Supp. 411, 421 (S.D.N.Y.1992) and *citing Deligiannis v. PepsiCo, Inc.*, 757 F. Supp. 241, 254 (S.D.N.Y.1991) (same); *Zola v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 84 Civ. 8522, 1987 WL 7742, at *5 (S.D.N.Y. Mar. 2, 1987) ("Mere non-performance of a promise does not support an inference that it was fraudulent when uttered."); *United States v. Autori*, 212 F.3d 105, 115 (2d Cir. 2000) (explaining that claim of mail or wire fraud requires allegation of "scheme to defraud")).

Moreover, Plaintiff's allegations are that Defendants offered in-house arbitration through which employees were paid some of their claimed commissions. This indicates that Defendants were willing to pay the owed commissions albeit not at the rate that

13

Plaintiff believed were due,[4] and counters any inference of fraud arising solely from the fact that Plaintiff's commissions were not paid. Simply stated, Plaintiff has not alleged sufficient facts plausibly indicating that Defendants' employees or representative where aware that at the time they made their statements that they were false, disregarded facts indicating that they were false, or had a motive to perpetrate a fraud. *See Shields*, 25 F.3d at 1129; *see also Harrell v. Primedia, Inc.*, 2003 WL 21804840, at *3 (S.D.N.Y. Aug. 6, 2003) (dismissing a fraud-based RICO claim when there were no facts alleged to show that defendants were not speaking truthfully when they made promises to plaintiffs regarding future stock options).

For the reasons discussed above, Plaintiff fails to plead facts setting forth a plausible RICO fraud claim.

### 3. A Pattern of Racketeering Activity

Further, Plaintiff has failed to allege facts indicating a pattern of racketeering activity. In addition to showing at least two predicate acts, a civil RICO plaintiff must also show that "the predicate acts [are] related and reveal continued, or the threat of continued, unlawful conduct." *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir.1994); *see Anctil v. Ally Financial, Inc.*, --- F. Supp.2d ----, 2014 WL 516686, at *10 (S.D.N.Y. Feb. 10, 2014)( "A 'pattern' is established for RICO purposes where the predicate acts 'themselves amount to, or ... otherwise constitute a threat of, continuing racketeering activity.'" )(*quoting H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240, 109 S. Ct. 2893, 106

---

[4] Of course, because Plaintiff did not access the in-house arbitration procedure he is unable to state whether he would have received all that was due under his employment agreement. Plaintiff's allegation that the employees who elected to proceed with the in-house arbitration procedure were awarded "only a fraction of the back commissions they were owed" is seemingly either surmise or based upon hearsay, but does not raise a strong inference that Defendants had the intent to commit fraud.

14

L. Ed.2d 195 (1989) (emphasis omitted). Thus, in order to allege a pattern of racketeering activity, a plaintiff must show both relatedness and continuity. *See, e.g., United States v. Daidone*, 471 F.3d 371, 375 (2d Cir. 2006). The so-called "continuity" requirement may "be satisfied either by showing a 'closed-ended' pattern— a series of related predicate acts extending over a substantial period of time— or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool*, 520 F. 3d at 183.

### i. Closed–Ended Continuity

To demonstrate "closed-ended continuity, the plaintiff must prove 'a series of related predicates extending over a substantial period of time.'" *Cofacredit S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir.1999)*(quoting H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 238, 242 (1989)).

> The Second Circuit has identified several "non-dispositive factors" considered by courts in determining whether closed-end continuity exists, "including, inter alia, the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." *GICC Capital Corp. v. Tech. Fin. Group. Inc.*, 67 F.3d 463, 467 (2d Cir.1995). Notwithstanding this list of factors, the Second Circuit has repeatedly emphasized that "closed-ended continuity is primarily a temporal concept," and has "never held a period of less than two years to constitute a 'substantial period of time.'" *Cofacredit*, 187 F.3d at 242; *see also DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001); *Spool*, 520 F. 3d at 184. The relevant period in evaluating continuity "is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place." *Spool*, 520 F. 3d at 184 (citations omitted).

*Li Jun An v. Hui Zhang*, 2013 WL 6503513, *8 (S.D.N.Y. Dec. 6, 2013).

Even reading Plaintiff's proposed Amended Complaint generously, the

15

alleged underlying predicate acts occurred only between April 2012 and August 2012. *See* Proposed Am. Compl. ¶¶ 52-56. This period of a few months, particularly when coupled with the fact that Plaintiff alleges only one scheme, does not illustrate closed-ended continuity. *See Cofacredit*, 187 F.3d at 244 ("[T]he predicate acts that the Windsor Defendants committed spanned less than one year - a period of insufficient length to demonstrate closed-ended continuity under our precedents."); *see also Spool*, 520 F.3d at 184; *Li Jun An*, 2013 WL 6503513, *8.

### ii. Open–Ended Continuity

"To satisfy open-ended continuity, the plaintiff ... must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit*, 187 F.3d at 242. When an enterprise's business is "primarily or inherently unlawful," such a threat is generally presumed. *Spool*, 520 F. 3d at 185 (citations omitted); *see also Li Jun An*, 2013 WL 6503513, *8. "In contrast, when the enterprise primarily conducts a legitimate business, no such presumption arises." *Li Jun An*, 2013 WL 6503513, *8 (*citing Spool,* 520 F. 3d at 185). In such a case, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Spool,* 520 F. 3d at 185.

Plaintiff has failed to allege facts that plausibly support an inference that Defendants' acts constitute a regular way of operating Defendants' business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity. The allegations indicate that after Axolotl Corp. was acquired by, and became a subsidiary of,

16

OptumInsight, Inc., Optum, UnitedHealth Group Incorporated and/or United Healthcare Services Inc., Plaintiff and other former Axolotl Corp. employees were promised but denied the commissions due under the agreements entered into with Axoloti. Plaintiff makes no mention of an ongoing scheme perpetrated by Defendants to continue to promise commissions to its employees and the failure to deliver such commissions. Moreover, Defendants have offered in-house arbitration to resolve the disputes regarding the commissions that are owed, and Plaintiff has ended his employment with Defendants. None of the alleged facts suggest that open-ended continuity is present in this case. *Cf. Spool*, 520 F.3d at 186 (finding that a "serious, but discrete and relatively short-lived scheme to defraud a handful of victims" did not establish open-ended continuity).

For these reasons, Plaintiff's RICO claim fails to sufficiency allege facts demonstrating a pattern of racketeering activity. Accordingly, the substantive RICO claim asserted in the proposed Amended Complaint fails to plead a claim upon which relief can be granted. It would be futile to amend the Complaint as proposed, and because better pleading would not cure the deficiency in pleading a pattern of racketeering activity, the RICO claim alleged in the original Complaint is dismissed with prejudice.

### 4. RICO Conspiracy

Plaintiff also accuses defendants of conspiring to violate RICO Section 1962(c). Because Plaintiff has failed to state a substantive RICO claim, his conspiracy claim necessarily fails as well. *First Capital Asset Mgmt. v. Satinwood, Inc.,* 385 F.3d 159, 182 (2d Cir. 2004); *Bonadio v. PHH Mortg. Corp.*, 2014 WL 522784, at *3 (S.D.N.Y., Jan. 31, 2014).

Even assuming Plaintiff had stated a substantive RICO claim, his RICO conspiracy claim nevertheless falls short. "The core of a RICO conspiracy is an agreement to commit predicate acts, and a RICO civil conspiracy complaint must specifically allege such an agreement." *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp.2d 297, 313 (S.D.N.Y.2010) (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990)). The proposed Amended Complaint does not identify any predicate acts the Defendants and their employee agreed to commit. Accordingly, plaintiff's RICO conspiracy claim is insufficient.

### 5. Conclusion - RICO Claims

For the reasons discussed above, the proposed Amended Complaint fails to set forth a cognizable substantive RICO fraud claim and a RICO conspiracy claim. Therefore, the motion to amend the Complaint with regard to the Fourth Cause of Action is denied. Because the substantive RICO fraud claim and a RICO conspiracy claim in the Complaint suffers from the same deficiencies as the proposed Amended Complaint, Defendants' motion to dismiss the Fourth Cause of Action is granted and this cause of action is dismissed with prejudice.

### b. Punitive Damages - Fifth Cause of Action

As Plaintiff correctly recognizes, there is no independent claim for punitive damages. Thus, the Fifth Cause of Action in the Complaint must be dismissed. To the extent Plaintiff seeks to amend the Complaint to add a claim for punitive damages in the "WHEREFORE" clause, the motion to amend is granted.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss the Fourth and Fifth Causes of Action in the Complaint [dkt. # 3] is **GRANTED**, and these causes of action are **DISMISSED** as set forth herein. Plaintiff's motion to amend the complaint [dkt. # 9] is **GRANTED IN PART AND DENIED IN PART**. The motion is granted inasmuch as Plaintiff may file an amended complaint adding a demand for punitive damages to the WHEREFORE clause, and the motion is denied in all other respects.

**IT IS SO ORDERED.**

Dated: March 7, 2014

_____
Thomas J. McAvoy
Senior, U.S. District Judge